IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MICHAEL CHAPMAN,           )
AIS 271129,                )
                           )
    Plaintiff,             )
                           )
v.                         )     CASE NO. 2:20-CV-7-WKW-CSC
                           )
JEFFERSON DUNN –           )
COMMISSIONER A.D.O.C., et al., )
                           )
    Defendants.            )

## RECOMMENDATION OF THE MAGISTRATE JUDGE

## I.     INTRODUCTION

Pro se Plaintiff Michael Chapman, an indigent state inmate, files this 42 U.S.C. § 1983 civil rights complaint seeking relief for certain claimed violations of his federally protected rights. This action involves a dispute over the adequacy of medical care and treatment Plaintiff received while confined at the Draper Correctional Facility ("Draper"). Plaintiff files suit against Jefferson Dunn, former Commissioner for the Alabama Department of Corrections ("ADOC"), Corizon, LLC,[1] Ruth Naglich, former Associate Commissioner of Health for ADOC, Mary Cooks, former Warden of Draper, Michele Sagers Copeland, a Registered Nurse formerly employed by Corizon, and Charlie Waugh, a Certified Registered Nurse Practitioner. Doc. 10.

---

[1] Identified by Plaintiff as "Corizon Medical." *See* Doc. 10. Corizon held the contract with the Alabama Department of Corrections to provide health care services to Alabama inmates from November 1, 2007 to March 31, 2018. Doc. 35-1 at 2. The current holder, Wexford, has held the contract since April 1, 2018. *Id.*

Defendants filed Special Reports with supplements (Docs. 13, 29, 35, 50, 51, 53, 55) which include relevant evidentiary materials in support, including declarations and medical records addressing the claims presented by Plaintiff. In their reports Defendants deny they violated Plaintiff's constitutional rights.

After reviewing the special reports and supplements the Court issued an Order on August 14, 2020, requiring Plaintiff to respond to the reports as supplemented with affidavits or statements made under penalty of perjury and other evidentiary materials. Doc. 36; *see also*, Docs. 52, 54. The Order specifically cautioned that, unless a party presented sufficient legal cause, the Court would treat the reports as motions for summary judgment, and rule on the motions after considering any response. *Id.* at 2–3. On February 3, 2021, Plaintiff filed a response.[2] Doc. 43. The Court subsequently directed Defendants to supplement their reports and granted Plaintiff an opportunity to respond (*see* Docs. 49, 52, 54), but he filed no further response. Pursuant to the August 14, 2020, Order, the Court now treats Defendants' special reports with supplements as motions for summary judgment and concludes they are due to be granted.

---

[2] In accordance with applicable federal law, the Court limits its discussion to the claims identified in the Amended Complaint. Doc. 10. *Gilmour v. Gates, McDonald & Co*., 382 F.3d 1312, 1315 (11th Cir. 2004) (holding that "[a] plaintiff may not amend his complaint through argument in a brief opposing summary judgment."); *Ganstine v. Sec'y, Fla. Dep't. of Corr.*, 502 F. App'x 905, 909-10 (11th Cir. 2012) (holding that a plaintiff may not amend complaint at the summary judgment stage by raising a new claim or presenting a new basis for a pending claim; *Chavis v. Clayton Cnty. Sch. Dist.*, 300 F.3d 1288, 1291 n. 4 (11th Cir. 2002) (noting that district court did not err in refusing to address a new theory raised during summary judgment because the plaintiff had not properly amended the complaint with respect to such theory).

## II.   STANDARD OF REVIEW

Under Rule 56(a) of the Federal Rules of Civil Procedure, a reviewing court must grant a motion for summary judgment if the movant shows that there is no genuine dispute as to any material fact and that the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). A dispute "is 'genuine' if the record as a whole could lead a reasonable trier of fact to find for the nonmoving party. . . . [A dispute] is 'material' if it might affect the outcome of the case under the governing law." *Redwing Carriers, Inc. v. Saraland Apartments*, 94 F.3d 1489, 1496 (11th Cir. 1996) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

The party asking for summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and alerting the court to portions of the record that support the motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). However, once the movant has satisfied this burden, the nonmovant is similarly required to cite portions of the record showing the existence of a material factual dispute. *Id*. at 324. To avoid summary judgment, the nonmovant "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In determining whether a genuine dispute for trial exists, the court must view all the evidence in the light most favorable to the nonmovant and draw all justifiable inferences from the evidence in the nonmoving party's favor. *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003); *see* Fed. R. Civ. P. 56(a).

Although factual inferences must be viewed in a light most favorable to the nonmoving party and pro se complaints are entitled to liberal interpretation, a pro se litigant does not escape the burden of sufficiently establishing a genuine dispute of material fact. *Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). Thus, a plaintiff's pro se status alone does not mandate this Court disregard elementary principles of production and proof in a civil case.

## III.   BACKGROUND

Plaintiff commenced this pro se action challenging Defendants' alleged violation of his Eighth Amendment rights for failing to provide adequate medical care during his incarceration at Draper. This matter is before the Court on Plaintiff's Amended Complaint filed on April 21, 2020.[3] Doc. 10. Plaintiff identifies January 4, 2018, as the date the challenged injury occurred (Doc. 10 at 2) but notes for purposes of the statute of limitations this action should be considered filed on the date he signed it which in this case was December 23, 2019.[4] Doc. 10-1 at 4; *see also* Doc. 1 at 4.

In the amended Complaint, Plaintiff alleges that Copeland and Waugh exhibited

---

[3] Plaintiff was directed to file an amended complaint to cure deficiencies found in his original complaint. *See* Doc. 7. Plaintiff's amended complaint (Doc. 10) supersedes his original complaint thus his original pleading was abandoned by the amended complaint and became "a legal nullity." *See Hoefling v. City of Miami*, 811 F.3d 1271, 1277 (11th Cir. 2016); *Pintando v. Miami-Dade Hous. Agency*, 501 F.3d 1241, 1243 (11th Cir. 2007) (observing that an amended pleading supersedes the former pleading).

[4] The Court agrees. Although the Clerk stamped the Complaint "received" on January 6, 2020, Plaintiff verified execution of the original complaint on December 23, 2019.  Doc. 1 at 4.  Thus, the latter date is the earliest Plaintiff could have placed the original complaint in the prison's mail system.  A pro se inmate's complaint is deemed filed under "the mailbox rule" the date he places it in the facility's mail system for delivery to the court.  *Houston v. Lack*, 487 U.S. 266, 271–72 (1988); *Adams v. United States*, 173 F.3d 1339, 1340–41 (11th Cir. 1999); *Garvey v. Vaughn*, 993 F.2d 776, 780 (11th Cir. 1993).  The Court therefore considers December 23, 2019, as the filing date of this action.

deliberate indifference to his medical needs for failing to respond to his sick call requests, grievances, and grievance appeals. Doc. 10 at 2–3. Plaintiff alleges that Dunn, Cooks, Naglich and Corizon exhibited deliberate indifference by not taking any action after he sent letters and copies of grievances detailing his receipt of inadequate medical care and treatment. *Id.* at 2–3. For relief, Plaintiff requests damages and injunctive relief. *Id.* at 4, 5–6.

In an attachment to his form Amended Complaint Plaintiff expounds on his claims. *See* Doc. 10-1. He asserts that beginning in December of 2014 Copeland began exhibiting deliberate indifference by denying or ignoring his need for cataract surgery which he claims is an ongoing issue. *Id.* at 1. Plaintiff received cataract surgery on his left eye in October 2016 and had several post-surgery follow-ups. *Id.* at 2.  At a follow-up visit in February 2017, the free-world physician who performed Plaintiff's cataract surgery informed him more post-op surgery was needed on his left eye which Corizon/ADOC had approved. *Id.* However, Plaintiff asserts he has not seen his free-world eye physician since that time because Copeland would not respond to his grievances. *Id.*

Plaintiff further complains that he received inadequate medical care and treatment regarding complaints of sinus and ear infections. Doc. 10-1 at 2. After developing an  ear infection  in June of 2017 Plaintiff sought medical treatment but contends the sick calls and grievances he submitted towards this effort went unanswered. *Id.* During a scheduled chronic care visit in August 2017, Waugh informed Plaintiff his ears were "pink and rosy" and there was nothing wrong with them. *Id.* at 2–3. Plaintiff asked Waugh to "put [him] in

for scheduling on [his] eyes," but the nurse told him to put in a sick call request about his ears and eyes. *Id.* at 3. Although Plaintiff maintains he "had shown Ms. Waugh that puss was coming out of both ears and continued to do so after [he] saw her in August 2017 all the way up until December 31, 2017, when [he] went into a coma" for which he underwent emergency surgery for a brain infection,[5] he further describes the condition of his ears prior to that time as a "run-of-the-mill" ear infection with symptoms of swimmer's ear and diminished hearing. *Id.*

## IV.   FACTS FROM PLAINTIFF'S RECORDS

Dr. Hugh Hood is the Regional Medical Director for Wexford Health Sources, Inc. Doc. 53-1 at 2. Wexford presently holds the contract with the ADOC to provide health care and mental health care related services to inmates in ADOC custody. *Id.* Dr. Hood avers that Waugh saw Plaintiff on August 10, 2017, at a chronic care visit where he complained about an ear infection. Docs. 53-1 at 3; 55-1 at 3. On examination of Plaintiff's ears Waugh observed no signs of an ear infection and told Plaintiff his tympanic membranes were normal at that time.[6] *Id.* Waugh did not see Plaintiff after August 10, 2017 for any complaints of an ear infection.[7] *Id.* On January 1, 2018, Dr. Karen Stone examined Plaintiff at the health care unit when he was brought in for an altered mental status or possible stroke

---

[5] Plaintiff was treated for mastoiditis and a right temporal abscess. *See* Doc. 53-1 at 61–64.

[6] Plaintiff's medical chart reflects Waugh noted "TM; bilat. Pearly white with no discharge." Doc. 55-1 at 6. A healthy eardrum can be pearly white or gray in color. *Available at https://my.clevelandclinic.org/.*

[7] Dr. Hood testifies that Wexford does not have copies of sick calls in Plaintiff's medical chart which he submitted between June 1, 2017, and January 1, 2018. Doc. 55-1 at 3. During that time period Wexford was not the contract medical provider. *See Id.* at 2.

*Id.* at 3, 10. Dr. Stone had Plaintiff  transported to Jackson Hospital in Montgomery, Alabama. *Id*. & Doc. 55-1 at 3–4. Plaintiff was subsequently transported to a hospital in Birmingham, Alabama, where he was diagnosed with and treated for mastoiditis and an intracranial abscess and has been "high acuity" since then. *Id.*; *see also* Doc. 53-1 at 61–104.

Dr. Hood states that Plaintiff underwent cataract surgery on his left eye in October 2016. Doc. 55-1 at 4, 11.  And although Plaintiff's right eye has been diagnosed with a cataract, that diagnosis is not considered a medical emergency and thus not considered medically necessary. Doc. 53-1 at 3–4, 25, 34, 60. If Plaintiff suffered from glaucoma or diabetic retinopathy Dr. Hood states Plaintiff's right-sided cataract would be considered a medical emergency and therefore medically necessary. *Id.* at 4. Plaintiff, however, does not presently have either condition and surgery for the right-sided cataract is therefore presently not medically necessary. *Id.*

Dr. Hood avers that Plaintiff is seen regularly for vision issues which includes follow ups for the cataract surgery performed on his left eye in 2016. Doc. 55-1 at 7, 11–35. Dr. Hood further states, and Plaintiff's medical records show, that Dr. Sebastian Heersink examined Plaintiff at a follow up appointment on February 14, 2017. Doc. 55-1 at 4, 15, 16.  Dr. Bradford, an optometrist, evaluated Plaintiff's eyes on October 18, 2018. *Id.*; Doc. 55-1 at 4, 18, 20. Dr. Heersink evaluated Plaintiff on March 4, 2020. Doc.  55-1 at 4, 21, 23, 24, 25–31. Plaintiff's prison medical chart indicates "Here for follow up for his left eye. Dr. Heersink told him needs *** for CBVA (Best Corrective Visual Accuity). Dr. Bradford has for *** reasons told him his left eye was fine." Doc. 55-1 at 4, 21. Dr.

Bradford evaluated Plaintiff's left eye on March 11, 2020, and Dr. Heersink evaluated Plaintiff for cataract surgery at a follow up appointment on May 4, 2021. Doc. 55-1 at 5, 22–31. Plaintiff had an eye evaluation at the Dothan Eye Center on October 1, 2021, and Dr. Bradford examined Plaintiff again on April 25, 2022. Doc. 55-1 at 5, 32–35.

## V.  DISCUSSION

Defendants Copeland and Waugh have raised the defense that Plaintiff's action against them is barred by the statute of limitations. Docs. 13, 17. Corizon denies Plaintiff's claims of deliberate indifference. Doc. 13. Specifically, Corizon argues that because Plaintiff fails to show a policy or custom of Corizon which deprived him of any constitutional right, his claims sound in *respondeat superior* liability and are, therefore, due to be dismissed. *Id.* at 4-12. Finally, Defendants Dunn, Naglich, and Cooks (collectively "the correctional defendants"), in their special report have also raised the defense that this action against them is barred by the statute of limitations. Docs. 24, 29. The correctional defendants further argue that because Plaintiff's Amended Complaint fails to submit any evidence or assert any allegations that they personally participated or had any responsibility for Plaintiff's medical care, Plaintiff fails to state a deliberate indifference claim against them nor can liability be imposed on them based on a theory of *respondeat superior*. *See id.* The correctional defendants also assert immunity in their official and individual capacities. *See id.*

**A.      Statute of Limitations**

**1.      Defendants Copeland and Waugh**

"All constitutional claims brought under § 1983 are tort actions, subject to the statute of limitations governing personal injury actions in the state where the § 1983 action has been brought." *McNair v. Allen*, 515 F.3d 1168, 1173 (11th Cir. 2008) (citation omitted). The governing limitations period in Alabama is two years. *Id.* (citing Ala. Code § 6-2-38)1); *Jones v. Preuit & Mauldin*, 876 F.2d 1480, 1483 (11th Cir. 1989)). Generally, the limitations period begins to run from the date "the facts which would support a cause of action are apparent or should be apparent to a person with a reasonably prudent regard for his rights." *Brown v. Ga. Bd. of Pardons & Paroles*, 335 F.3d 1259, 1261 (11th Cir. 2003) (quoting *Rozar v. Mullis*, 85 F.3d 556, 561-62 (11th Cir. 1996). Therefore, the limitations period begins to run when the plaintiff knows or should know (1) that he has suffered the injury that forms the basis for his complaint, and (2) who caused that injury. *Chappell v. Rich*, 340 F.3d 1279, 1283 (11th Cir. 2003).

Plaintiff filed this action on December 23, 2019. Doc. 1 at 10, 17. Consequently, his claims arising before December 23, 2017, are barred by the two-year statute of limitations. *See Owens v. Okure*, 488 U.S. 235, 249–50 (1989); Ala. Code § 6-2-38(l).

Copeland testifies in her declaration, which Plaintiff does not dispute, that she was employed by Corizon as the Health Services Administrator ("HSA") for Staton and Draper beginning on November 1, 2007, and left employment with Corizon on November 29, 2017. Doc. 51-1 at 2. She further testifies that she has no knowledge of the issues presented by Plaintiff. *Id.*   And Waugh testifies in her declaration, which

Plaintiff does not dispute, that she temporarily left employment with Corizon on December 11, 2017, under the Family and Medical Leave Act ("FMLA") and did not return to her position at the prison until the end of February 2018. Doc. 50-1 at 2.Waugh denies any knowledge of the issues presented by Plaintiff. *Id.*

Copeland and Waugh therefore argue that Plaintiff's § 1983 claims against them are barred because the most recent date that Copeland could have had any interaction with Plaintiff occurred on or before November 29, 2017, and the most recent date that Waugh could have had any interaction with Plaintiff occurred on or before December 11, 2017. Consequently, neither Copeland nor Waugh could have engaged in any of challenged conduct about which Plaintiff complains which occurred after these respective dates. Based on the unopposed affidavits filed by Waugh and Copeland (Docs. 50-1, 51-1), Plaintiff did not file this action until after the limitations period expired regarding his claims against these defendants.

Plaintiff maintains this action is timely because the limitation period only began to run on January 4, 2018, when he became aware that he had received surgery for a brain abscess and then filed this action on December 23, 2019. Doc. 43 at 19. Plaintiff has not identified any facts, however, that could support a finding that he would not have been aware of any injury that Copeland and Waugh allegedly caused, respectively, before November 29, 2017, or December 11, 2017, when they stopped providing treatment to ADOC inmates.[8] *See Chappell*, 340 F.3d at 1283. That is, Plaintiff has not

---

[8] As noted, Waugh did not return to employment status at Draper until the end of February 2018. Doc. 50-1 at 2.

demonstrated that any conduct he attributes to Copeland and Waugh was the cause of his injury.

Thus, the statute of limitations began to run on the claims arising from Copeland's challenged conduct, at the latest, on November 30, 2017, and ran uninterrupted until the limitation period expired on December 2, 2019.[9] The statute of limitations began to run on the claims arising from Waugh's challenged conduct, at the latest, on December 12, 2017, and ran uninterrupted until  the limitation period expired on December 12, 2019. Although Plaintiffs argues he filed this action within the limitation period applicable to his claims, at the end of the day, he filed this action against Copeland and Waugh too late. Thus, Plaintiff's claims against these defendants are untimely and are due to be dismissed. And Plaintiff has not demonstrated that there were any extraordinary and unavoidable circumstances that prevented timely filing of his challenges regarding the conduct of Copeland and Waugh about which he complains. In addition (and as discussed below), Plaintiff's claims against Copeland and Waugh alternatively are due to be denied because he has not identified facts sufficient to create a triable issue on his alleged deliberate indifference claims against them.

**B.    Sovereign Immunity**

Plaintiff seeks money damages on his claims for relief. In response, the correctional defendants assert Plaintiff's suit against them, to the extent they are sued in their official

---

[9] Since expiration of the limitations period for Plaintiff's claims against Copeland expired on November 30, 2019, a Saturday, the two-year period of limitations expired the following Monday, December 2, 2019. Rule 6(a)(1)(C), Fed.  R. Civ. P. ("[I]f the last day [of the period] is a Saturday, Sunday, or legal holiday, the period continues to run until the end of the next day that is not a Saturday, Sunday, or legal holiday.").

capacities, is barred by the Eleventh Amendment immunity. Official capacity lawsuits are "in all respects other than name, . . . treated as a suit against the entity." *Kentucky v. Graham*, 473 U. S. 159, 166 (1985). The Eleventh Circuit has held:

> [T]he Eleventh Amendment prohibits federal courts from entertaining suits by private parties against States and their agencies [or employees]. There are two exceptions to this prohibition: where the state has waived its immunity or where Congress has abrogated that immunity. A State's consent to suit must be unequivocally expressed in the text of [a] relevant statute. Waiver may not be implied. Likewise, Congress' intent to abrogate the States' immunity from suit must be obvious from a clear legislative statement.

*Selensky v. Alabama*, 619 F. App'x 846, 848–49 (11th Cir. 2015) (quotation marks and citation omitted). Thus, a state official may not be sued in his official capacity unless the State has waived its Eleventh Amendment immunity, *see Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984), or Congress has abrogated the State's immunity, *see Seminole Tribe of Fla. v. Fla.*, 517 U.S. 44, 59 (1996). "Alabama has not waived its Eleventh Amendment immunity in § 1983 cases, nor has Congress abated it." *Holmes v. Hale*, 701 F. App'x 751, 753 (11th Cir. 2017) (*citing Carr v. City of Florence, Ala.*, 916 F.2d 1521, 1525 (11th Cir. 1990)); Ala. Const. Art. I, § 14. Thus, to the extent Plaintiff sues the correctional defendants in their official capacities, as state actors, they are entitled to sovereign immunity under the Eleventh Amendment for claims seeking monetary damages. *Selensky*, 619 F. App'x at 849; *Jackson v. Georgia Dep't of Transp.*, 16 F.3d 1573, 1575 (11th Cir. 1994).

### C.    Qualified Immunity

Regarding Plaintiff's claims against the correctional defendants in their individual capacities, they argue that Plaintiff's allegations fail to state a claim and that they are

entitled to qualified immunity. Qualified immunity offers complete protection from civil damages for government officials sued in their individual capacities if their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Qualified immunity is not merely a defense against liability but immunity from suit, and the Supreme Court "repeatedly [has] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Pearson v. Callahan*, 555 U.S. 223, 231–32 (2009) (quotation marks and citation omitted). To receive qualified immunity, the public official must first prove he was acting within the scope of his discretionary authority when the allegedly wrongful acts occurred. *Lee v. Ferraro*, 284 F.3d 1188, 1194 (11th Cir. 2002). There is no dispute that the correctional defendants here were acting within the course and scope of their discretionary authority when the challenged incident occurred. Plaintiff must, therefore, allege facts that, when read in a light most favorable to him, show that the correctional defendants are not entitled to qualified immunity. *Cottone v. Jenne*, 326 F.3d 1352, 1358 (11th Cir. 2003).

To satisfy his burden, Plaintiff must show two things: (1) that a defendant committed a constitutional violation and (2) that the constitutional right a defendant violated was "clearly established." *Crosby v. Monroe Cnty*., 394 F.3d 1328, 1332 (11th Cir. 2004). "To be clearly established, a right must be sufficiently clear that every reasonable official would [have understood] that what he is doing violates that right. . . . In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Reichle v. Howards*, 566 U.S. 658, 664 (2012) (citations and quotation

marks omitted) (alteration in original). "Clearly established law" means (1) "a materially similar case has already been decided;" (2) "a broader, clearly established principle that should control the novel facts of the situation;" or (3) "the conduct involved in the case may so obviously violate the constitution that prior case law is unnecessary." *Gaines v. Wardynski*, 871 F.3d 1203, 1208–09 (11th Cir. 2017) (citations omitted). The controlling authority is from "the Supreme Court of the United States, the Eleventh Circuit, or the highest court in the relevant state." *Id.* at 1209. "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and protects all but the plainly incompetent or those who knowingly violate the law." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012) (citations and quotation marks omitted). The Eleventh Circuit "has stated many times that if case law, in factual terms, has not staked out a bright line, qualified immunity almost always protects the defendant." *Gaines*, 871 F.3d at 1210 (citations and quotation marks omitted). "Exact factual identity with the previously decided case is not required, but the unlawfulness of the conduct must be apparent from pre-existing law." *Coffin v. Brandau*, 642 F.3d 999, 1013 (11th Cir. 2011) (citation omitted). If a plaintiff cannot establish both elements to satisfy his burden, the defendants are entitled to qualified immunity, and the court may analyze the elements "in whatever order is deemed most appropriate for the case." *Rehberg v. Paulk*, 611 F.3d 828, 839 (11th Cir. 2010) (*citing Pearson*, 555 U.S. at 241–42).

### D.    Deliberate Indifference

The Supreme Court determined in *Estelle v. Gamble*, 429 U.S. 97, 104 (1976), that "deliberate indifference to serious medical needs of prisoners" violates the Eighth

Amendment. "To establish a deliberate indifference claim, a plaintiff must show: (1) a serious medical need; (2) the defendant's deliberate indifference to that need; and (3) causation between the defendant's indifference and the plaintiff's injury." *Roy v. Ivy*, 53 F.4th 1338, 1346-47 (11th Cir. 2022) (citation omitted).

A claim for deliberate indifference has both an objective and a subjective component. The objective element requires Plaintiff to demonstrate the existence of an "objectively serious medical need." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Id.* (quotation marks and citation omitted). The subjective component of a deliberate indifference claim requires that a defendant have subjective knowledge of the risk of harm and consciously disregard that risk. *Farmer v. Brennan*, 837 (1994) ("We hold . . . that a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety…"). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*; *see also Farrow*, 320 F.3d at 1246 (quotation marks and citation omitted) (holding that "an official acts with deliberate indifference when he knows that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate").

The deliberate indifference standard requires a plaintiff to demonstrate that the conduct complained of entailed more than mere negligence or "an inadvertent failure to

provide adequate medical care." *Estelle*, 429 U.S. at 105; *Farmer*, 511 U.S. at 835. "Delay in access to medical attention can violate the Eighth Amendment . . . when it is tantamount to unnecessary and wanton infliction of pain." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994) (quotation marks and citations omitted). "Cases stating a constitutional claim for immediate or emergency medical attention have concerned medical needs that are obvious even to a layperson because they involve life-threatening conditions or situations where it is apparent that delay would detrimentally exacerbate the medical problem." *Id.* But medical treatment does not need to be "perfect, the best obtainable, or even very good." *Keohane v. Fla. Dep't. of Corr. Sec'y*, 952 F.3d 1257, 1266 (11th Cir. 2020) (quotation marks and citation omitted). Only medical treatment that is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness" violates the Eighth Amendment. *Id.* (quotation marks and citation omitted). An inmate who received care but disagrees with the course of treatment provided or desired another type of treatment cannot, without more, demonstrate deliberate indifference. *Hamm v. DeKalb Cnty.*, 774 F.2d 1567, 1575 (11th Cir. 1985). Thus, "a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment [fails to] support a claim of cruel and unusual punishment." *Keohane*, 952 F.3d at 1266 (quotation marks and citation omitted). Deliberate indifference requires that a defendant intentionally failed to provide medical care. *See McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999).

### 1.    Defendants Dunn, Naglich, and Cooks

Plaintiff asserts that the correctional defendants acted with deliberate indifference to his health because they did not intervene on his behalf after he made them aware through letters and copies of sick call requests and grievances that he was not receiving adequate medical treatment. Doc. 10 at 3, Doc. 10-1 at 5.  Despite detailing in his documents sent to the correctional defendants how he was not receiving adequate medical care, Plaintiff asserts they took no action. *Id.*

The correctional defendants argue Plaintiff's claims against them are barred by the statute of limitations. Doc. 29. These defendants further argue they had no responsibility for Plaintiff's medical care during his incarceration at Draper and that they are entitled to sovereign and qualified immunity. *Id*. The correctional defendants also argue that they cannot be held liable in this action under a theory of *respondeat superior* and because: (1) they make no decisions related to inmate medical care and relied on the medical expertise and medical professionals in Corizon's employ to provide medical care to inmates including Plaintiff; (2) they had no involvement in the provision of Plaintiff's health care nor any direct or indirect knowledge of any of his health-related issues; and (3) they defer to the professionals employed by the prison medical care provider regarding the health care needs of Plaintiff during his incarceration. *See* Docs. 35-1, 35-2, 35-3.

To the  extent Plaintiff's claims against the correctional defendants are not barred by the statute of limitations, he  presents no facts which  create a triable issue regarding his claim that the correctional defendants acted with deliberate indifference to his medical needs. It is clear from the pleadings that the correctional defendants are not health care

professionals and do not make decisions regarding inmate medical care and treatment. There is no evidence that the correctional defendants were responsible for determining the level of necessary medical care for Plaintiff; that they impeded his access to medical care; that they attempted to intercede, overrule, or influence decisions made by medical personnel regarding Plaintiff's medical care; or that they personally participated in or had any direct involvement with the medical treatment provided to him. *See* Docs. 35-1, 35-2, 35-3.

In the event Plaintiff seeks to hold the correctional defendants liable for the treatment provided by medical professionals, he is likewise entitled to no relief:

> The law does not impose upon correctional officials a duty to directly supervise health care personnel, to set treatment policy for the medical staff or to intervene in treatment decisions where they have no actual knowledge that intervention is necessary to prevent a constitutional wrong. *See Vinnedge v. Gibbs*, 550 F.2d 926 (4th Cir. 1977) (a medical treatment claim cannot be brought against managing officers of a prison absent allegations that they were personally connected with the alleged denial of treatment). Moreover, "supervisory [correctional] officials are entitled to rely on medical judgments made by medical professionals responsible for prisoner care. *See, e.g., Durmer v. O'Carroll*, 991 F.2d 64, 69 (3d Cir. 1993); *White v. Farrier*, 849 F.2d 322, 327 (8th Cir. 1988)." *Williams v. Limestone County, Ala.,* 198 Fed.Appx. 893, 897 (11th Cir. 2006).

*Cameron v. Allen*, 525 F. Supp. 2d 1302, 1307 (M.D. Ala. 2007).

Finally, if Plaintiff seeks to hold the correctional defendants liable under a theory of *respondeat superior* or vicarious liability, the law is settled that liability in a 42 U.S.C. § 1983 action may not be based on either of these theories. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (finding that "[g]overnment officials may not be held liable for the unconstitutional conduct of their subordinates under the theory of *respondeat superior*.");

*Cottone*, 326 F.3d at 1360 (holding that "officials are not liable under § 1983 for the unconstitutional acts of their subordinates [or co-workers] on the basis of respondeat superior or vicarious liability."). "[E]ach Government official, his or her title notwithstanding, is only liable for his or her own misconduct." *Ashcroft*, 556 U.S. at 677.

Even if supervisory liability under § 1983 cannot be established by the supervisor's personal participation in the complained acts, liability may be shown by "the existence of a causal connection linking the supervisor's actions with the violation." *Lewis v. Smith*, 855 F.2d 736, 738 (11th Cir. 1988). "Although § 1983 requires a connection between the official's acts or omissions and the plaintiff's injury, an official also may be liable where a policy or custom that he established or utilized resulted in deliberate indifference to an inmate's constitutional rights. [*Marsh v. Butler Cnty., Ala.*, 268 F.3d 1014, 1059 (11th Cir. 2001) ]." *Salas v. Tillman*, 162 F. App'x. 918, 922 (11th Cir. 2006). A plaintiff can establish a causal connection only when

> [A] history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so. Alternatively, the causal connection may be established when a supervisor's custom or policy ... result[s] in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."

*Harrison v. Culliver*, 746 F.3d 1288, 1298 (11th Cir. 2014) (citation omitted).

Plaintiff asserts that the correctional defendants were informed of his health issues and are ultimately responsible and obligated to provide medical care and  investigate an inmate's claim that he is being denied medical care. Doc. 43 at 27–28. In their affidavits, the correctional defendants state that they have no knowledge of Plaintiff's medical care

or his medical complaints. Docs 35-1, 35-2, 35-3. These defendants further testify that they do not have any involvement with the daily medical treatment provided to inmates and, because they have no medical training, they rely on the medical expertise of the medical professionals employed by the prison health care provide. *Id.* Finally, the correctional defendants state they had no involvement with the medical care Plaintiff received at Draper and have no knowledge, directly or indirectly, of Plaintiff's medical issues, or the health care provided to him. *Id.*

There is no allegation by Plaintiff nor evidence in the record which shows the correctional defendants had any involvement in his allegedly deficient medical care. Moreover, there is no evidence any of the correctional defendants is an official having responsibility for the challenged action which is necessary to show a connection to the alleged unconstitutional acts at issue. *See Luckey v. Harris*, 860 F.2d 1012, 1015–16 (11th Cir. 1988). Although Plaintiff contends he provided some awareness to the correctional defendants about his medical condition and they had general supervisory authority over ADOC facilities and their employees, there is no evidence they had decision-making authority regarding his medical treatment or took any action in that regard. The correctional defendants state they had no personal involvement in or awareness of the health care provided to Plaintiff and defer to the contract medical professionals for decisions relating to the medical treatment of Plaintiff and other inmates. Plaintiff has also not produced evidence that the correctional defendants had any notice of a history of abuse regarding medical policies, that they were involved in establishing a specific custom or policy related

to medical care, or that they directed subordinates to act unlawfully or failed to stop them from acting unlawfully regarding medical care. *See Harrison*, 746 F.3d at 1298.

Here, Plaintiff seeks to hold the correctional defendants liable in their supervisory roles for medical decisions made by their subordinates—in this case the medical professionals—involved in the provision of medical care and treatment to Plaintiff. Plaintiff has not, however, produced sufficient evidence to establish a genuine dispute of material fact that the correctional defendants took any action related to Plaintiff's health care or that they had any knowledge of his health care related issues. *See Williams*, 198 F. App'x at 897; *Cameron*, 525 F. Supp. 2d at 1307. Accordingly Defendants Dunn, Naglich, and Cooks are entitled to qualified immunity on Plaintiff's claims against them and summary judgment is due to be granted in their favor.

### 2.    Defendant Copeland

Plaintiff alleges Copeland failed to respond to his sick calls and grievances seeking medical care for matters associated with eye and ear infections.[10] *See* Doc. 10-1. Initially, if Plaintiff seeks to challenge Copeland's failure to respond to grievances as a violation of his  right to due process, in the context of a prison setting, "an inmate grievance procedure is not constitutionally required." *Spencer v. Moore*, 638 F. Supp. 315, 316 (E.D. Mo. 1986) (citations omitted). "[A prison] grievance procedure is a procedural right only, it does not confer any substantive right upon the inmates.  Hence, it does not give rise to a protected

---

[10] Although Plaintiff complains Copeland did not respond to his sick call requests, no evidence has been presented that Copeland, as the Health Services Administrator, was involved in the provision of medical care and treatment to inmates. *See* Doc. 46-1 at 3.

liberty interest requiring the procedural protections envisioned by the fourteenth amendment." *Buckley v. Barlow*, 997 F.2d 494, 495 (8th Cir. 1993) (quotation marks and citation omitted); *Bingham v. Thomas*, 654 F.3d 1171, 1177–78 (11th Cir. 2011) (affirming trial court's dismissal, under 28 U.S.C. § 1915A, of inmate's challenge to adequacy of prison's grievance procedures finding "a prison grievance procedure does not provide an inmate with a constitutionally protected interest"). Next, Plaintiff's own evidentiary materials show that Copeland did, in fact, respond to several grievances he submitted related to vision matters. *See* Doc. 43 at 5–7 & Docs. 43-1, 43-2, 43-4; 43-5. That Plaintiff was dissatisfied with the responses he received does not state a constitutional violation. Finally, even assuming Copeland received the grievances and grievance appeals Plaintiff maintains went unanswered (*see* Docs. 43-10—43-16), this assertion only infers Copeland had some knowledge or awareness of his medical condition and that she should be liable in her role as HSA. Plaintiff, however, has produced no evidence demonstrating Copeland knew intervention for his complaints of sinus and ear infections was medically required or necessary or that she personally participated in or had any direct involvement with his medical treatment for those conditions.

Here, the Court finds Plaintiff's allegations that Copeland exhibited deliberate indifference to his serious medical needs are conclusory and unsupported. There is no indication or allegation that Copeland was responsible for or involved in providing medical care to Plaintiff, diagnosing his medical condition or needs, or prescribing medications. *See Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (*abrogated by Lewis v. City of Union City, Georgia*, 918 F.3d 1213 (11th Cir. 2019) (holding plaintiff's

"conclusory assertions . . ., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment"); *Harris v. Ostrout*, 65 F.3d 912, 916 (11th Cir.1995) (holding that grant of summary judgment appropriate where inmate "produced nothing, beyond his own conclusory allegations" challenging actions of the defendants). Nor has Plaintiff produced any evidence Copeland actually knew of any serious medical need he had and intentionally failed or refused to provide adequate medical care. Plaintiff therefore has not presented or identified any specific facts from which a reasonable trier of fact could conclude that Copeland had subjective knowledge that Plaintiff faced a substantial risk of serious harm and subsequently disregarded that risk. *See Harper v. Lawrence Cnty., Ala.*, 592 F.3d 1227, 1234 (11th Cir. 2010); *Hale v. Tallapoosa Cnty.*, 50 F.3d 1579, 1582 (11th Cir. 1995) (explaining that a plaintiff must produce sufficient evidence that the defendant's deliberate indifference to a known serious risk of harm caused the plaintiff's constitutional injury.); *McElligott*, 182 F.3d at 1255 (holding that for liability to attach, the official must know of and then disregard an excessive risk of harm to the inmate); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998)(holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Therefore, even if Plaintiff's claims against Copeland are not time-barred, he has not demonstrated that she acted with deliberate indifference to his medical needs.

### 3. Defendant Waugh

Waugh examined Plaintiff's ears on August 10, 2017, during a chronic care visit. Doc. 55-1 at 3, 6. At that time she observed no sign of infection in Plaintiff's ears and noted

his tympanic membranes were normal. *Id.* Although Plaintiff maintains he showed Waugh Q-tips used to swab his ears, presumably offered as proof he had an ear infection, her response was that they were disgusting and told him to throw them away.[11] Doc. 43 at 11. Waugh, Plaintiff complains, did not refer him to a physician or obtain a culture from the Q-tips which he claims is standard operating procedure. *Id.* The unrefuted evidence of record reflects that the only time Waugh treated Plaintiff was August 10, 2017. Doc. 55-1 at 3, 6.

Even assuming Waugh's treatment of Plaintiff was subpar, this allegation is insufficient to create a disputed issue of fact on a claim of deliberate indifference. During their only encounter, Waugh's examination of Plaintiff's ears did not reveal any sign of infection and she noted his tympanic membranes appeared normal. Waugh's assessment of Plaintiff was based on the information she obtained from her examination of him at that time. No evidence indicates that Waugh was subjectively aware of any serious medical condition when she treated Plaintiff. Although Plaintiff maintains Waugh should have undertaken other measures like notifying a doctor or obtaining cultures from the Q-tip swabs, the standard for deliberate indifference requires that a defendant knows of and disregards a substantial risk of serious harm to an inmate's health or safety. *Farmer*, 511 U.S. at 837-38; *see also Estelle*, 429 U.S. at 105 (explaining that imperfect medical treatment, "although it may produce added anguish, is not on that basis alone to be

---

[11] Plaintiff indicates drainage from his ears only occurred at night. *See* Doc. 43 at 10. The Court further notes that Plaintiff's medical records from the free-world hospital where he received surgery for a right temporal abscess show that he described the historical symptoms of his illness as involving a dull headache and right ear pain for several months which had been managed symptomatically with non-steroidal anti-inflammatory drugs ("NSAIDS") and antihistamines. Doc. 53-1 at 61, 74, 78, 83.

characterized as wanton infliction of unnecessary pain."). Thus, Waugh's conduct is judged based on information available to her at the time. *See Williams v. Mehra*, 186 F.3d 685, 692 (6th Cir. 1999) (quoting *Farmer*, 511 U.S. at 837) (holding that "the standard is not whether there is something easy that the doctors, with the benefit of hindsight, could have done. It is whether they 'kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'").

On this record, the Court finds that the course of treatment undertaken by Waugh did not violate Plaintiff's constitutional rights as it was not "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505 (quotation marks and citation omitted). Although Plaintiff believes Waugh should have ordered additional diagnostic tests to assist in diagnosing his health issues or referred him to a physician, whether she "should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (quotation marks and citation omitted); *Tucker v. Busbee*, 619 F. App'x 868, 870 (11th Cir. 2015) (quotation marks and citation omitted) (holding that "[n]egligence in diagnosing or treating a medical condition, including an inadvertent failure to provide adequate medical care, does not state a valid claim for deliberate indifference."); *Hamm*, 774 F.2d at 1575 (inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991), *vacated pursuant to settlement*, 931 F.2d 711 (11th Cir. 1991), *and opinion reinstated sub nom. Howell v.*

*Burden*, 12 F.3d 190 (11th Cir. 1994) (holding that the failure of medical personnel to pursue alternative means of treating inmate's condition does not "rise beyond negligence to the level of [deliberate indifference].").

In the event Plaintiff claims Waugh's treatment of him was deficient because he subsequently suffered an adverse event which Waugh did not foresee, he is likewise entitled to no relief. Without more, this claim amounts to, at most, negligence. However, as explained, the facts must show more than medical malpractice, misdiagnosis, accidents, or a poor exercise of medical judgment. *See Estelle*, 429 U.S. at 104–07; *see also Farmer*, 511 U.S. at 835–36 (finding a complaint alleging negligence in diagnosing or treating "a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment[,]" nor does it establish the requisite reckless disregard of a substantial risk of harm so as to demonstrate a constitutional violation.); *Null v. Mangual*, 2012 WL 3764865, at *2–3 (M.D. Fla. Aug. 30, 2012), *appeal dismissed* (11th Cir. No. 12-14749, Nov. 28, 2012) (finding misdiagnosis of inmate with Ganglion cyst that "was eventually diagnosed as synovial sarcoma, a form of skin cancer [leading to a later discovery of] multiple spots of cancer on his lungs . . . fail[ed] to show that Defendants acted with deliberate indifference as opposed to mere negligence. . . . At most, [Defendants] misdiagnosed Plaintiff's growth, which amounts to a claim of negligence or medical malpractice."); *Payne v. Groh*, 1999 WL 33320439, at *5 (W.D. N.C. July 16, 1999) (*citing Sosebee v. Murphy*, 797 F.2d 179 (4th Cir.1986)) (finding "[a]n allegation of misdiagnosis, even when accompanied by a speculative allegation of subjective intent, amounts only to the state-law tort of medical malpractice, not to a tort of constitutional magnitude for which Section

1983 is reserved. Conclusory allegations sounding in malpractice or negligence do not state a federal constitutional claim").

In sum, Plaintiff has not alleged or identified any specific facts on which a reasonable jury could find that Waugh knew the manner in which she provided treatment to him created a substantial risk to his health and that with this knowledge consciously disregarded such risk. *Keohane*, 952 F.3d at 1266. Consequently, even if Plaintiff's claims against Waugh are not time-barred, he has not demonstrated that she acted with deliberate indifference to his medical needs.

### 4.    Corizon

Corizon argues it is entitled to summary judgment on Plaintiff's claims because he has no evidence that any policy or custom of Corizon caused him harm. Doc. 13. The Court agrees. Plaintiff presents no evidence in his pleadings that Corizon had a policy or custom that contributed to his alleged constitutional violations.

As previously explained, the law is settled that, generally, "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of *respondeat superior* or vicarious liability." *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) (quotation marks and citation omitted). The Eleventh Circuit has extended that rule to private corporations like Corizon. *See, e.g., Craig v. Floyd Cnty., Ga.*, 643 F.3d 1306, 1310 (11th Cir. 2011). Where the state and the entity enter such a contractual agreement, the private healthcare company is a "person" acting under color of state law, and thus may be liable under § 1983. *Howell*, 922 F.2d at 723-24 (11th Cir.) (internal citation omitted). By virtue of the contract, the private entity also "performs a function

traditionally within the exclusive prerogative of the state and becomes the functional equivalent of the municipality under section 1983." *Craig*, 643 F.3d at 1310 (quotation marks and citation omitted). Accordingly, under *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978) (holding that a municipality cannot be held liable on a theory of *respondeat superior*), a private entity providing medical services to inmates pursuant to a contract with the state is only liable under § 1983 where it employs a custom or policy constituting deliberate indifference to an inmate's serious medical need. *See Howell*, 922 F.2d at 724 n.13 (noting that the policy or custom analysis applied to a corporation is the same as the analysis applied to municipalities under *Monell*). To hold a defendant liable as a supervisory official, a plaintiff must show that "the supervisor personally participate[d] in the alleged constitutional violation or [that] there is a causal connection between actions of the supervising official and the alleged constitutional deprivation." *Hartley*, 193 F.3d at 1269.

The challenged policy or custom need not be express. A policy is "a decision that is officially adopted" or created on behalf of the entity. *Sewell v. Town of Lake Hamilton*, 117 F.3d 488, 489 (11th Cir. 1997). A custom is any practice that is "so settled and permanent" as to carry the force of law. *Id*. To establish the existence of a custom, the evidence must show more than an isolated incident leading to constitutional injury, and instead, must reflect the pattern is widespread. *McDowell v. Brown*, 392 F.3d 1283, 1290 (11th Cir. 2004). To show the practice at issue is sufficiently widespread to constitute a custom, a plaintiff ordinarily must produce evidence that the practice resulted in deficient treatment of other inmates. *See Craig*, 643 F.3d at 1312. Ultimately, the plaintiff must produce

sufficient evidence of a "series of constitutional violations from which deliberate indifference can be inferred." *Id*. (quoting *Estate of Novack ex rel. Turbin v. Cnty. of Wood*, 226 F.3d 525, 531 (7th Cir. 2000)).

On this record, Plaintiff has not produced sufficient evidence to establish a genuine dispute of material fact regarding whether Corizon implemented a policy or custom evidencing deliberate indifference to his serious medical needs. Specifically, Plaintiff identifies no facts nor produces any evidence of a custom or policy of Corizon to purportedly withhold medically necessary medical care or treatment nor evidence of any permanent widespread practice to deny necessary medical care or treatment to inmates. *See Craig*, 643 F.3d at 1310 (explaining that to impose liability under § 1983, a plaintiff must prove that a municipality had a "policy or custom" of deliberate indifference that led to the violation of his constitutional right). Corizon is therefore due to be granted summary judgment on Plaintiff's Eighth Amendment claim.

## VI.   SUPPLEMENTAL JURISDICTION

Plaintiff's claims asserted against the medical defendants (Defendants Copeland, Waugh, and Corizon), liberally construed, implicate the state torts of negligence or medical malpractice. Review of such claims is only appropriate upon exercise of the Court's supplemental jurisdiction. In the posture of this case, however, the exercise of such jurisdiction is inappropriate.

For a federal court "[t]o exercise [supplemental] jurisdiction over state law claims not otherwise cognizable in federal court, the court must have jurisdiction over a substantial federal claim and the federal and state claims must derive from a "common nucleus of

operative fact." *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 427 (11th Cir. 1984) (quotation marks and citations omitted). The exercise of supplemental jurisdiction is discretionary. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966). "[I]f the federal claims are dismissed prior to trial, *Gibbs* strongly encourages or even requires dismissal of the state claims." *L.A. Draper & Son*, 735 F.2d at 428. In view of the Court's determination that the medical defendants are entitled to summary judgment on Plaintiff's Eighth Amendment claims, Plaintiff's state tort claims asserted against them are due to be dismissed. *United Mine Workers of America*, 383 U.S. at 726 ("if the federal claims are dismissed prior to trial, … the state claims should be dismissed as well"); *see also Ray v. Tennessee Valley Autho.*, 677 F.2d 818, 824-25 (11th Cir. 1982).

## VII.   CONCLUSION

Based on the foregoing, the undersigned Magistrate Judge RECOMMENDS that:

1.      Defendants' Motions for Summary Judgment (Docs. 13, 29) be GRANTED.

2.      Judgment be ENTERED in favor of Defendants.

3.      This case be DISMISSED with prejudice.

It is ORDERED that by **February 23, 2023**, the parties may file objections to this Recommendation. The parties must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made.  Frivolous, conclusive or general objections will not be considered by the Court. This Recommendation is not a final order and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in accordance with 28 U.S.C. § 636(b)(1) will bar a party from a de novo determination by

the District Court of legal and factual issues covered in the Recommendation and waive the right of the party to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11TH Cir. R. 3-1; *see Resol. Tr. Corp. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

Done, this 9th day of February 2023.

/s/   Charles S. Coody
CHARLES S. COODY
UNITED STATES MAGISTRATE JUDGE